### How et al. v. KANE, impleaded with COGSWELL.

1. DORMANT PARTNERSHIP—EQUITY—CREDITORS' BILL.—Where a mercantile business had been carried on in the name of C., K. being his dormant partner in it, and creditors obtained judgment against the former for

debts contracted in carrying it on, upon which executions had issued and been returned *nulla bona;* a bill, alleging that K., the dormant partner, had, by fraudulent contrivance with the ostensible partner, obtained a transfer and possession of the partnership assets in fraud of such creditors, will be maintained, and a discovery of the assets of the firm enforced, and they be subjected to the payment of such debts.

2. DORMANT PARTNER—PRIORITY OF PAYMENT.—In the case of a *dormant* partnership, a partnership creditor has no prior right to be paid out of the common property, in preference to the separate creditor of the ostensible partner.

3. DORMANT PARTNER—EQUITY.—A *dormant* partner is liable in equity for partnership debts to the extent of the assets he has received from the partnership, though judgments for such debts have been rendered against the *ostensible* partner only.

4. SAME.—Where creditors have elected to pursue the ostensible partner only, *at law,* their claims are merged in the judgments recovered, so that in a court of equity they cannot fall back on their original right against both, and get a personal decree against the *dormant* partner beyond the amount of the assets he has received.

5. CREDITOR'S BILL—EXECUTION.—The objection that the execution issued at law, upon the return of which, *nulla bona,* the bill is founded, is irregular, and that it was made returnable on a day out of term without a special order, is not available in a creditor's suit, on demurrer or otherwise, except by getting it set aside by the law court, and then setting that fact up as matter of defense.

6. SAME.—A court of equity will not review or decide upon the *regularity* of either *mesne* or final process issued by another court of general jurisdiction.

7. CHANGE FROM TERRITORY TO STATE—COURTS.—The state constitution was adopted in March, 1848, but the territory was not admitted, by act of congress as a state, until May 20, 1848. *Held,* that the adoption of the constitution by the people of the territory did not create it a state, and that such political change could be effected only by the action of congress admitting it, but there could be no *interregnum,* and the territorial courts remained in the meantime in the proper exercise of their legal functions and judgments rendered by them up to the time of the admission of the state by congress, are valid.

(2 *Chand.* 222.)

APPEAL from the Circuit Court for *Washington* County.

This was an appeal by the defendant, *Kane,* from the decision of the circuit judge of the third circuit, overruling his demurrer to the complainants' bill.

This demurrer assigned causes, which are designated in the

opinion of the court, and his counsel also assumed to assign other causes of demurrer *ore tenus*, which were coupled with the causes assigned upon the record, and were urged at the same time therewith.   The right to do this was objected to by the counsel for the complainants until the final hearing of the cause, or at least, not until the written demurrers should have been decided by the court adversely to the demurring party.   The opinion of the court sufficiently shows that the causes of demurrer assigned *ore tenus* were not considered or decided.

The general principles of the bill are referred to in the opinion of the court, and it is not deemed necessary to enlarge such statement by the insertion of the special acts of fraud alleged, and which are not pertinent to the matter of the written demurrers.   It is proper, however, to state that the bill does allege, that in the formation of the co-partnership of *Kane & Cogswell*, it was especially agreed by the defendant, that the name of the defendant, *Kane*, should not be used, and that all the liabilities created should be in the name of the defendant, *Cogswell*, and that the name of *Kane* should be concealed as a party in interest, and that this arrangement was acted upon in the creation of the debts made with the complainants and others ;  and that until the alleged fraudulent assignment and transfer of the co-partnership effects by *Cogswell* to *Kane, Kane* assumed to be merely a clerk to *Cogswell ;* and that the assignment by *Cogswell* was in fraud of creditors, and merely colorable, to protect the property for their mutual benefit ; and that after such pretended sale and assignment, the partnership continued as before, *Cogswell* then claiming and pretending to be the clerk, and *Kane* the principal.

*E. G. Ryan* and *J. Holliday*, for appellant, *Kane*.

I. This is not a creditor's bill seeking to reach the property of the judgment debtor in the hands of a third person.   It is either a bill seeking to establish in equity the original liability of a dormant partner, or it is a bill by the judgment creditors

of an individual partner, seeking payment of the debtor part-
ner's separate liability out of the partnership.

1. The frame of the bill, in the stating and charging parts,
and in the prayer, all consistent and uniform, seems to settle
the first proposition, that it is exhibited to enforce the original
liability of *Kane* as a dormant partner of *Cogswell*. In the
stating part the whole seems framed on this idea. So is
framed the charging part. So is the prayer. It seems impos-
sible to resist this conclusion. And if this be the construction
of the bill, it is clearly bad.

2. This is seeking in equity the appropriate function of a
court of law, to enforce the payment of a simple contract debt
against the parties primarily liable upon it. There is no pre-
cedent for it. *Penny v. Martin*, 4 Johns. Ch. 566; WASHING-
TON, J., in *Willings v. Consequa*, 1 Pet. C. C. 302; *Wiggins
v. Armstrong*, 2 Johns. Ch. 144; *Angell v. Draper*, 1 Vern.
399; *Shirley v. Watts*, 3 Atk. 200; *Bennett v. Musgrave*,
2 Ves. 51; *Balch v. Wastall*, 1 P. Wms. 445; Mitf. Eq. Pl.
115; *Baker v. Biddle*, 1 Bald. 417.

It is noticeable and important that there is no averment in
the bill that the complainants were ignorant of the partner-
ship at the times of the recovery of the judgments. If, at the
time of the suits brought against *Cogswell*, they had notice
of the partnership, they had a right of election to make the
dormant partner a party or not. Story's Partnership, § 241
and note.

For all that appears in the bill, they exercised that elec-
tion, and discharged *Kane*. This even seems to be apparent
in the case of all the judgments except one, for they were
obtained within twenty days of filing the bill. There is here
no pretense of mistake. Even admitting that they had no
notice of the partnership before judgment, it may still be
questioned, whether, after the recovery against *Cogswell*, there
is any remedy at law against *Kane*. It is believed that there
is not. *Smith v. Black*, 9 Serg. & R. 142; *Ward v. Johnson*,

13 Mass. 148 ; *Robertson v. Lynch*, 18 Johns. 451 ; *Sheehy v. Mandeville*, 6 Cranch, 253 ; 2 Cond. 362.

But it seems very certain that whether there be a remedy at law or not, this bill cannot be sustained on the ground now considered, for if there be, then clearly equity will leave the complainants to it ; and if there be not, then there is no foundation for equity to act upon. There is no equitable liability growing out of partnership which is not founded on a legal liability, except as between the partners.

It is lately a common but erroneous idea, that equity has a remedy in every case of doubtful legal right. Equity creates no new rights, except on some special grounds of jurisdiction, within none of which this bill comes ; it only enforces rights existing at law, which the courts of law are inadequate to enforce. Nor, so far as this bill seeks to enforce *Cogswell's* liability as an original debt against *Kane*, is there any hardship in this, for the credit was given to *Cogswell*, and to him only.

3. In the present view of the bill it is multifarious. Several judgment creditors may indeed unite in one bill against their common judgment debtor and his trustees for a discovery of his property, and satisfaction of their judgments (Story's Eq. Pl., § 286); but that is a peculiar case, very different from this. That is the case of persons who have severally ascertained their rights at law, and who come into equity for a common satisfaction of them. This is a case, as against this defendant, of persons claiming to be his several creditors, and seeking to enforce against him their several rights in one bill. The claims of the complainants are several, distinct and independent. There is no privity or community of right between the complainants. This defendant is not bound by the judgments, and may make distinct and different defenses against the complainants. The facts of purchase and notice may be different. If the case put by the bill affords any remedy, some may prevail, and some fail on the facts of each case. There is no

common right, no joint claim in the complainants, and the bill is multifarious. Story's Eq., § 279; *Harrison v. Hogg*, 2 Ves. 323; *Boyd v. Hoyt*, 5 Paige, 65; *Yeaton v. Lennox*, 8 Pet. 123.

II. This may be considered a bill by the judgment creditors of an individual partner, seeking payment of his separate liability out of the partnership funds. Admitting this defendant's original liability with *Cogswell* at law, that liability has been merged in the judgments (*Smith v. Black*, 9 Serg. & R. 142; *Ward v. Johnson*, 13 Mass. 148; *Robertson v. Lynch*, 18 Johns. 451; *Peters v. Sanford*, 1 Denio, 224); and the separate judgment creditors of *Cogswell* stand in the same relation to the partnership as if their claims had been originally separate demands against him, especially if this is the result of an election which was binding on the defendants; and in the absence of all allegation to the contrary, the court is to assume that it was by election. Now the separate judgment creditors of a partner have only two modes of reaching the partnership assets: 1. By levying execution on the interest of the debtor partner, and filing a bill in the name of the sheriff or creditor, pending the levy against the partnership, for a discovery of the partner's interest, and then selling it; or, 2. By selling it without such discovery, when the right of calling the partnership to an account vests in the purchaser. Story's Partnership, §§ 261–264. Neither course has here been pursued, and the complainants have missed their true remedy.

There is another view of this bill in which it cannot be sustained as a creditor's bill. When a judgment creditor has exhausted his remedy at law, he is permitted by modern practice, aided by statutes, to seek a discovery of his debtor's property in equity, and the application of it to the satisfaction of the judgment. He may thus reach the debtor's property in the hands of trustees or stakeholders, making them parties. But this remedy reaches only the separate property of the judgment debtor. It is a peculiar remedy, strictly limited to

its appropriate uses, and it would be an innovation, wholly unsanctioned by authority or precedent, to extend it so as to reach the property of a partnership of which the judgment debtor is a member.   This defendant is not alleged to have separate property of the judgment debtor ; he is alleged to have property of a subsisting partnership, composed of himself and the judgment debtor ; and to reach such property is not the office of a creditor's bill.   If *Kane* is a trustee, he is the trustee, not of *Cogswell*, but of the partnership.   The bill discloses the fact that there are other original creditors of the partnership.   These other creditors may now be, or hereafter become, judgment creditors against both defendants ; and it is not the duty of the court to give priority to the separate judgment creditors of one partner over the joint creditors of the partnership, whether the separate creditors became so by election or by *laches*.

III.  The equitable jurisdiction of fraud will not be found to aid this bill.   The mere allegation of fraud does not give equity jurisdiction.   The case must be brought within some settled rule of equitable interposition against fraud.   Here it is sought to charge *Kane* with the debts contracted by *Cogswell*.   And it is very clear that none of the facts alleged, happening subsequently to the accruing of those debts, aid the jurisdiction of the court, on the ground of fraud.   The case must be taken on the facts as they were when the debts were contracted by *Cogswell*.   And these facts, as alleged, are simply that there was a partnership between the defendants, *Cogswell* being the ostensible, and *Kane* a dormant partner.   This is not fraud in fact or in law.   The relation of a dormant partner to the partnership and its creditors, is of such ordinary occurrence, that it has long been settled and sanctioned by the highest judicial authorities.   Collyer on Part. 3, 62, 393, 424 ; Story's Part., §§ 63, 80, 159.   Nor, as these authorities show, is there any distinction between dormant and secret partners, except in a single point irrelevant to this

case.   There was then no fraud in the dormant partnership of *Kane*, nor in the secrecy of his relations to the partnership.   Nor any hardship on the complainants, for the credit was given to *Cogswell* alone.   Certainly, according to the state of facts set up in the bill, *Kane* was liable with *Cogswell*, if the creditors saw fit to hold him so ; but they had elected to discharge him and pursue *Cogswell*, alone, as they have done.   Collyer, 424.   But the mere suppression of his name at the time of the contracts, is sanctioned by ancient commercial practice, and a long train of judicial decisions.   And the court will notice that the bill states no fraudulent device or intent in the formation of this first state of partnership, or in the incurring of the liabilities by it. All the fraudulent imputations of the bill are reserved for the second state of partnership, when *Kane* became the ostensible and *Cogswell* the secret partner.

It is not now necessary to discuss how far these imputations of fraudulent intent might or might not sustain a bill similar to this, seeking to hold *Cogswell* liable for judgments obtained against *Kane*.   It is sufficient to say that they cannot aid the jurisdiction of the court in this case for relief on foot for prior contracts, on the ground of fraud.   The concealment of *Kane's* partnership at the time of the purchases by *Cogswell* from the complainants, is not such fraud as calls for the aid of a court of equity.   Story's Eq., §§ 204, 220.

IV.   Considered as a creditor's bill, this bill is fatally defective for several reasons.   A creditor's bill is permitted only when a creditor has exhausted his remedy at law, by the due return of an execution unsatisfied.   And it is immediately founded on the return of *nulla bona* by the sheriff.   In *Storm v. Waddell*, Vice Chancellor SANFORD called these " bills of unsatisfied judgment and execution creditors."   *Hendricks v. Robertson*, 2 Johns. Ch. 283 ; *Williams v. Brown*, 4 id. 682 ; *McDermott v. Strong*, id. 687 ; *Brinkerhoff v. Brown*, id. 671 ; *Cassidy v. Meacham*, 3 Paige, 311 ; *Clarkson v. De*

*Peyster*, id. 320 ; *McIlwain v. Willis*, id. 506.   Affirmed by
court of errors, December, 1832.   *Child v. Brace*, 4 id. 314 ;
*Reed v. Wheaton*, 7 id. 663 ; *Merchant's Bank v. Griffith*, 10
id. 519.   And this jurisdiction goes upon the principle of
*lien*.   See the cases quoted, and a full review of them in
*Storm v. Waddell*, 2 Sandf. 494.   There must then be in
order to sustain a creditor's bill, a judgment unsatisfied ; an
execution duly issued and returned unsatisfied ; an exhaust-
ing of all remedies at law ; and a lien to be enforced.

1. Here is no judgment in the case of the complainants,
*Van Buren* and *Churchill*.   It is not alleged in the bill to
have been recovered at any term of the district court.   Nor
was there then any territorial district court existing.   The
state constitution was adopted on the 2d Monday of March,
1848.   And from thence the territorial courts of the United
States ceased to exist.

2. Here is no allegation that the judgments were docketed.
The true construction of our law is, that there is no lien on
real estate until the judgment is docketed.   And the omission
is fatal.   *Wheeler v. Heermance*, 3 Sandf. 597.   And this is
understood to have been held by the territorial courts.   See
form in 3 Hoffman's Pr. 224.

3. Here are no executions duly issued and returned unsatis-
field.   All process was then to be made returnable on the first
day of the next term, unless otherwise directed by the judge.
These were not return days.   Any direction of the judge to
change the regular return days should be of record, and the
record of it should appear.   These writs were then return-
able on no lawful return day.   And were not writs, but void.
The rule requires the complainants to exhaust their remedies
at law.   A return of *nulla bona* before the return day would
be insufficient.   *Cassidy v. Meacham*, 3 Paige, 311.   So
when execution is issued to another county than that of the
defendant's residence.   *Wheeler v. Heermance*, 3 Sandf. 597 ;
*Reed v. Wheaton*, 7 Paige, 663.   And it is a mere mockery

to say that the issuing of those executions *pro forma*, returnable within one or two days, contrary to the statutory provision, exhausted the remedy at law against *Cogswell*.

4. There should have been an averment that the bill was not exhibited by collusion with the judgment debtor. See form, 3 Hoffman's Pr. 225. This is essential, for otherwise the court would be called upon in the name of a fictitious or originally real creditor, under judgments controlled by the judgment debtor, to do indirectly what the court would not do directly. This averment is due to the integrity of the court. And this is believed a proper case to enforce it in.

V. The order of the circuit court to answer over is wrong. The order directs the bill to be taken *pro confesso*, unless fully answered within a specified time. This order is unusual and improper. After overruling one demurrer to the whole bill, we had the right to demur and plead, or demur and answer, or answer and plead. Mitford's Eq. Pl. 16. And it is improper to order that the bill be taken *pro confesso* unless *fully* answered. The order to answer should be that the bill be answered or taken *pro confesso*, leaving the complainant to his exceptions if necessary.

*D. H. Chandler* and *H. S. Orton*, for the complainants, made and argued the following points :

1. The first cause of demurrer is insufficient. The objection made by it is, that the execution in favor of *Van Buren* and *Churchill* was made returnable on a day which by law it could not be, without a special order of the court from which it issued.

This cause of demurrer presents an issue of *fact*, whether the order of the court was procured or not. It assumes a fact which is not alleged in the bill. A demurrer, to be good, cannot perform such a function. It is a speaking demurrer.

Granting the execution was irregularly issued, or returnable, the demurring defendant should have applied to the court in which it was issued, to have it set aside. This court will not

hear an impeachment of the regularity of the process of another court, where it is the basis or an integral part of the bill filed here. *Williams v. Hogeboom*, 8 Paige, 469 ; *Sanford v. Sinclair*, 8 id. 373. To the same point, *Shottenkirk v. Wheeler*, 3 Johns. Ch. 275 ; *Campbell v. Farrall*, 1 Lloyd & Goold (Temp. Plunkett), 388.

A *fieri facias* having a wrong teste or return, or a misdescription of the court in the name of which it is issued or made returnable, or other errors, is not rendered void, but voidable only, and may be amended. *Williams v. Rogers*, 5 Johns. 163, and cases there cited ; *Scott v. Shaw*, 13 id. 378 ; *Cramer v. Vanalstyne*, 9 id. 386 ; *Hone v. Mosely*, 2 Edward's Ch. ; *Atkinson v. Newton*, 2 Bos. & Pul. 336 ; *Campbell v. Cumming*, 2 Bur. 1187 ; *Phelps v. Ball*, 1 Johns. Cases, 31 ; *Laroche v. Washburn*, 2 Term, 737 ; *Bissell v. Kipp*, 5 Johns. 100 ; *Jackson v. Walker*, 4 Wend. 462 ; *McIntire v. Rowan*, 3 Johns. 144.

2. But the defendant *Kane*, who alone defends in this suit, is not a party to any of the executions upon which this bill is filed, and cannot set up any error in the issuing of the executions, or the return thereof. A stranger to a judgment or execution cannot set up any defense to its validity. *Bissell v. Kipp*, 5 Johns. 89, and cases there cited.

3. The second cause of demurrer is likened to the first, with the exception of the objection that no irregularity in the executions is alleged, except as respects the return day of them, and as to that it alleges the same objections. This cause of demurrer is also subject to the same objection as the first, as a *speaking demurrer*.

Those parts of the first and second demurrer which we claim are *speaking*, are such of them as allege facts not patent upon the face of the bill, but *dehors* it, and which, if of any avail to have been stated, would have told efficiently in an *answer* to the bill, but cannot by way of demurrer.

A speaking demurrer is that which states some fact which

does not appear in the bill, and which is necessary to support the demurrer. It cannot state what is not alleged in the bill without being subject to be overruled. Mitf. Eq. Pl. 213; Story's Eq. Pl. 352, §§ 447–449; *Kuyper's Ex'rs, etc. v. The Ministers, Elders, etc., of Reformed Dutch Church*, 6 Paige, 570; 2 Ves. Jr. 83; 2 Ves. 245; Lube Eq. Pl. 340; *Verplanck v. Caines*, 1 Johns. Ch. 57.

The two causes of demurrer above referred to are applied to different and distinct parts of the bill, but neither one of them to the whole, although they both profess to be put into the whole bill; and if bad as to the whole, they must fail, and be overruled. It is admitted that distinct demurrers may be put into distinct parts of the bill, but they must so purport on the face of them. Story's Eq. Pl. 349, §§ 443, 444, and authorities there quoted.

4. The third cause of demurrer assumes, upon the matters of the bill, to claim for the demurrant, as a matter of law, all exemption from liability on account of the judgments in favor of complainants, because judgments have been recovered against *Cogswell* alone, and that hence he, *Kane*, is released from any claim made upon him by the "bill." The principle here asserted is a fallacy, and the sooner it is dissipated shall we arrive at the truth.

A party complainant, in a creditor's bill, may join with the judgment debtor any other persons whose acts are in hostility to his rights, or any person who has possessed himself of the property of the judgment debtor sought to be reached by the bill, and in which he is alleged to have an interest, and which cannot be reached, by reason of fraudulent concealment, or which is alleged to have been fraudulently assigned and covered up. The bill charges that *Cogswell* and *Kane*, by the willing consent and co-operation of both, have fraudulently invested *Kane* with the whole property to which the creditors were entitled, and he wrongfully withholds it from them. The question of *Kane's* liability, upon the principle of his having

been a partner with *Cogswell* at the time the debts were contracted, and at the time *Cogswell* gave his individual responsibility therefor, is not the point now to be decided.   We have the right, by this bill, to sift the consciences of the parties, and to compel them to discover the alleged fraud by which the property has been covered up, and to compel them to disgorge what belongs to us ; and we are not to be put aside by technicalities, shifts, devices or legerdemain.   We have a right to probe their rottenness to the bottom, and to gather the honest fruit which may be disclosed by the purification.

Though the bill charges *Kane* to have been originally liable as a joint debtor with *Cogswell*, and is still legally and equitably liable, yet we have the right to discovery of the property in his hands which is covered up, and in which *Cogswell* is interested, whether *Kane* is exempt from liability by reason of the recovery of the judgment against *Cogswell*, or not.

In accordance with the principle here assumed, the following authorities are cited :  *Suydam v. Hoyt*, 5 Paige, 65 ; *Edmiston v. Lyde*, 1 id. 637 ;  1 Barb. Pr. 156 ; *Stafford v. Mott*, 3 Paige, 100 ; 2 Barb. Pr. 156 ; *Leroy v. Rogers*, 3 Paige, 234 ; *McDonald v. Strong*, 4 Johns. Ch. 687 ; *Wright v. Hitchcock*, 3 Munf. 521 ;  *Jones v. Henry*, 3 Lit. 427 ; *Donovan v. Finn*, Hopk. 59–85 ;  *Weed v. Pierce*, 9 Cow. 722 ; *Hendricks v. Robinson*, 2 Johns. Ch. 296 ; *Johnson v. Gilbert*, 3 Conn. 166 ; *Middleton Bank v. Russ*, 3 id. 135 ; *Cammack v. Johnson*, 1 Green, 164 ;  *Bryan v. Knickerbocker*, Barb. 409 ; id. 34.

It is no objection to a bill that it prays for too much relief. Though it does so, the court will grant such part of the relief as is compatible with the case made by it.

5.  A demurrer put in to the whole bill will be overruled if any of the relief or discovery prayed for is sustainable.  *Kimberly v. Sells*, 3 Johns. Ch. 467 ; *Leroy v. Vedder*, 1 Johns. Cases, 417 ;  *Laight v. Morgan*, id. 429.

If the defendant regards the prayer for relief too broad, he

should demur to such part thereof as is not sound, and answer as to the residue. *Whitbeck v. Edgar*, 2 Barb. Ch. 106. Where a bill is filed for discovery and relief against a party who is not liable as respects relief, but is bound to make discovery, a demurrer by him to the whole bill will be overruled. He should only demur to the relief, and discover by answer as to the remainder. *Wright v. Dana*, 1 Metc. 237.

6. The fourth cause of demurrer is a general one, claiming that the complainants are not entitled to either discovery or relief, as against the demurring defendant, because the bill does not make such a case as to entitle the complainants to either. It is confidently believed that the preceding authorities clearly show that the complainants are entitled to both; and that if the whole relief which is prayed for cannot be granted on the final hearing, a part of it, at least, must be, and that we are entitled to the discovery sought for, beyond a peradventure.

STOW, C. J. Did the bill in this case depend upon its name, or any name, it would be difficult to sustain it. It is not technically a creditor's bill. The complainant's counsel, in answer to an inquiry from the bench, says, that it is not a bill in aid of an execution. And, as far as it seeks to subject the defendant *Kane*, personally, to a decree for the payment of the judgments against his partner *Cogswell*, it is clear that it cannot be supported. Yet, taken altogether, rejecting a good deal of the stating and charging part as impertinent, and denying the principal relief sought, we are of opinion that the bill should be sustained as to the discovery, and as to some portion of the relief which it seeks.

The bill was filed by the complainants *Howe* and eight others, judgment creditors of the defendant *Cogswell*, in behalf of themselves and all other judgment creditors of *Cogswell*. It states that the defendants were partners in mercantile business, and that their partnership commenced in 1844;

that *Cogswell* was the active and only ostensible partner; that the debts on which the judgments were obtained were contracted on account of the partnership, and in the way of its business; and that executions have been issued on the judgments, and returned unsatisfied. It further states, that in 1846, *Cogswell* ceased to be the active and ostensible partner, *Kane* becoming such; the business of the concern, however, continuing the same as before; that at about that time *Cogswell*, pretending to be insolvent, and being in dread of attachments against him, transferred, or pretended to transfer, all his interest in the concern to *Kane*, receiving therefor a consideration which is alleged to have been merely nominal, and that this transfer was made on the eve of attachments against *Cogswell*, for partnership debts, being about to be levied on the partnership property; that this property, or the avails of it, is now in the hands of *Kane*, and is in equity liable to the payment of the judgments, and the bill seeks to subject it to that purpose. The bill also claims that *Kane*, having been originally liable with *Cogswell*, as a partner for the consideration of all the judgments, and having now in his possession all the assets of the co-partnership, is personally liable to a decree for the amount of the debts, and which decree, among other things, it prays.

This bill has been taken as confessed, against *Cogswell*. *Kane* has demurred, and has assigned as special causes of demurrer:

1st and 2d. That the writs of *fieri facias* on the several judgments were not returnable on the first day of any term of court, nor were allowed by any order of the judge, to be made returnable on the days on which they were returnable; nor were returnable on any day on which by law they could be made returnable without such order, and that they were therefore void.

3d. That the bill sets up that the defendant *Kane* was *Cogswell's* partner, and jointly liable with him to the com-

plainants, at the time of the accruing of the indebtedness, and of the recovery of the judgments, and that, therefore, the complainants have a complete remedy at law, and, consequently, none in equity.

4th. General want of equity in the bill.

Several other causes of demurrer have been assigned, or have been attempted to be assigned, *ore tenus*, on the argument of the appeal.

For the understanding of this demurrer, it is necessary to refer to the bill more particularly than has been done in the general summary already given. It states that all the judgments, except that in favor of the complainants, *Van Buren* and *Churchill*, were obtained in the Milwaukee county circuit court, on the 3d day of September, 1849, and on which writs of *fieri facias* were issued the fifth of that month, returnable the eighth. And that the judgment in favor of *Van Buren* and *Churchill* was obtained in the late territorial district court of Milwaukee county, the *eleventh of May*, 1848, and on which a *fieri facias* issued September 20, 1849, returnable the next day.

To this last judgment the objection is interposed, *ore tenus*, that at the time of its rendition, May 11, 1848, there was in fact no territorial district court of Milwaukee county—the territorial government, with all its machinery and incidents, having been abrogated by the adoption by the people of the state constitution, in March preceding, and that, therefore, the judgment is absolutely void, as being *coram non judice*.

It is to be borne in mind, that though our state constitution was voted upon and adopted by our people, in March, 1848, it was not sanctioned by congress, and the *territory* admitted into the union as a *state*, until the 20th of May following.

The objection to this judgment of *Van Buren* and *Churchill*, raises the question, whether the adoption by our people of their state constitution did, in fact, of itself, abrogate the territorial government, and thus, *ipso facto* constitute us a state ;

or, whether that political change was effected only by congress sanctioning our constitution, and admitting us into the Union?

This is a subject which is now convulsing the nation, but it is one on which I do not entertain, and never have had, a doubt.

I know no wilder or worse political or legal heresy, than this new-fangled doctrine of a territory constituting itself a state, and being, at the same time, within and without the nation. The proposition involves a confusion of ideas, and cannot be expressed without a solecism in terms. Could such a thing be conceived and be carried into actual practice, it would be attended with the worst confusion, and the most disastrous results; first anarchy, and then the destruction of the federal constitution. By no means intending any disrespect to the very able and candid counsel who have argued for the defendant, I cannot countenance, even by an argumentative denial, any such doctrine. It is of the same school, and involves the same principles as that of the right of secession—in plain, but bad English, the right of nullification—a doctrine which has had but few disciples in our country, and none where free air is breathed; and of the two I think it the worst. Politicians even such as approach the grade of statesmen, may assert this doctrine, and pretend to believe it, and,

"Convincing others, half convince themselves;"

but no American judge, sensible of the obligations of his oath, and of his duty to our whole country, can give it any sanction. In our political system a territory can become a state only by the action and assent of the national government, and there is not, and cannot be, any such thing as an American state outside the federal Union. With us, and probably with no people or government, is a claim of protection, equality and fraternity recognized, which is accompanied with a disclaimer of dependence, obligation and allegiance.

Our territorial courts and all the other machinery of our territorial government were in the full legal and effective exercise

548 SUPREME COURT OF WISCONSIN,

How et al. vs. Kane.

of their appropriate functions, until, on the 29th of May, 1848, the United States congress, by approving of our constitution, and admitting us into the Union, emancipated us from provincial pupilage, and made Wisconsin an integral part of the American republic.

We therefore hold that *Van Buren* and *Churchill's* judgment, as far as the objection of want of jurisdiction in the district court is concerned, was valid, and that all judgments obtained in the territorial district courts up to May 29th, 1848, if in other respects unobjectionable, are also valid. What may be the virtue and condition of judgments obtained during the interregnum between that time and the 28th of August, when the circuits went into operation, it is not necessary, nor is it proper to decide.

The first cause of demurrer assigned on the record is, that the executions were returnable out of term, without an order having been first obtained from the judge for that purpose, as required by the statute. Waiving the objection that this demurrer is speaking, in setting up matter not contained in the bill, the answer is, that this court cannot take notice of such an irregularity. *Williams v. Hogeboom*, 8 Paige, 469. The executions were not void, but at most voidable; and the proper course for the defendant, if he wished to be relieved from them, was to have applied to the court from which they issued to set them aside.

A further cause of demurrer was attempted to be assigned here, though not in the court below, that the judgment in favor of the complainants, *West, Oliver* and *Charles*, does not appear from the bill to have been founded on a partnership debt. Without deciding whether a demurrer, *ore tenus*, not resorted to on the argument below, can be entertained here on appeal, we think, taking the whole context of the bill, that this debt is in fact stated to have been that of the partnership. But whether this be so or not is immaterial, as we are of opinion that the whole of the partnership property, if liable at all, is as

much liable to judgments against *Cogswell*, the only ostensible partner, for his individual as for his co-partnership indebtedness. And this brings me to the consideration of the only question of principle (except that of the jurisdiction of the late district courts) involved in this case ; and that is : Is the property belonging to two partners (one of whom is dormant and unknown), in their co-partnership capacity, liable on a judgment against the visible partner ?

It is remarkable that upon a question like this, and which commercial transactions must or might have often given rise to, but little authority is to be found.

The general doctrine no doubt is, that personal property in the possession, and subject to the control of the debtor, and of which he is the ostensible owner, is liable for his debts. This rule, it is true, is subject to many exceptions, some by the lenity and policy of the common law, and more by fraudulent legislation ; but among these exceptions I am not aware that the latent right of a dormant partner is one. To say nothing of the original character of the debt, whether it may have been in fact contracted as a private one, or on account of the partnership, and in the course of its business, such a withdrawing from process of the debtor's property, or of that of which he was the apparent owner, and on the faith of which it may be presumed the credit was acquired, is not permitted, either by the common law or by any statute. It is a palpable fraud ; and though by common-law process the creditor may have redress by selling the property, and contesting the legal right in a subsequent action, yet, where the parties confederate and have involved it in such disguise and confusion that an execution cannot readily reach it, I can conceive of no possible objection to a court of equity lending its aid. It is the right of the creditor to invoke that aid, and the duty of the court to grant it.

Now, what is this case ? The defendants, *Cogswell* and *Kane*, form a partnership in 1844 (I lay out of view all badges

of fraud in the inception of the partnership, the motives for *Kane's* being kept in the background, and the roguish correspondence appended to, and made part of the bill), by which they engage in mercantile business, *Cogswell* to be the known and ostensible partner, and *Kane* a secret and unknown one, the business to be conducted in the name of *Cogswell* alone, but for the equal and joint benefit of both. Under this arrangement they continue in business for years, the ostensible partner contracting large debts in his own name, but for the benefit of the partnership, among which debts are the judgments, to enforce the collection of which this bill is filed. After these debts, or some of them, had become due, and attachments had been issued against *Cogswell*, and were about being levied, he transfers, or attempts to transfer, the whole of the partnership property in his possession to his secret partner, *Kane*, without any consideration, or any actual change in their relations, as a mere manœuvre to defraud, hinder and delay their creditors by making *Kane*, instead of *Cogswell*, the ostensible owner and active partner. Judgments are obtained against *Cogswell;* executions—the validity of which for the purpose of this bill, we have already seen, is not to be called in question—are issued, and the sheriff, finding no property in the hands of *Cogswell*, returns them *nulla bona.* The specific property transferred by *Cogswell*, or its avails and equivalent in the shape of real estate, it is alleged is still in the hands of *Kane*.

The question then recurs : Is this property, thus situated, subject in equity to the judgments against *Cogswell ?* We think it is.

In the case of *French v. Chase,* 6 Green, 166, the chancellor of New Jersey held, that the prior right of a partnership creditor to be paid out of the common property, in preference to the separate creditor of the ostensible partner, did not exist in case of a dormant partnership, and that in such a case the whole of the partnership property in the hands of the

ostensible partner was liable for his individual debts. This doctrine, in the absence of conflicting or overruling authority —and it is difficult to conceive how there can be any—we regard as the law, and we give it our unqualified sanction.

This view of the subject disposes of the objection so confidently asserted, that a court of equity cannot go behind the judgment at law and inquire into its consideration. For, as has been already observed, it is wholly immaterial whether the debt was contracted by the ostensible partner in his partnership or individual capacity. And here I may remark, that the proposition that you cannot go behind the judgment and inquire into its consideration, is subject to many qualifications and exceptions. Cases arising under our insolvent and exemption laws are familiar and in point.

We therefore hold that the circuit court was right in deciding that *Kane* was bound to disclose and account for so much of the partnership property and its avails in his hands, as was formerly in the possession of *Cogswell*, while acting as the ostensible partner. And that in the meantime it was proper he should be restrained by injunction from disposing of it.

It has already been observed, that as far as the bill seeks to subject the defendant *Kane*, personally, to a decree for payment of the judgments against *Cogswell*, it cannot be sustained. The complainants having elected to pursue *Cogswell* alone at law, and having merged their claims against the partnership in judgments against him alone, cannot now fall back upon a court of equity for the purpose of asserting their original right. The law on this subject is too well settled to be called in question at this day. *Smith v. Black*, 8 Serg. & R. 142. And so are all the authorities, with one solitary exception, and that is the case of *Sheehy v. Mandeville*, 6 Cranch. That case, great and deserved as is the respect and deference of the whole American bar and bench for the late illustrious chief justice of the United States, has

never been regarded as law. It is one of the few—the very few—instances in which that great judge erred.

One ground of the appeal is, that the defendant should not have been ordered to answer fully. It is almost always as a mere favor that a party demurring, and whose demurrer has been in the whole overruled, is allowed to answer at all; and it is a matter of discretion with the court to impose such terms as the circumstances of the case may seem to warrant.

The decree of the circuit court must be affirmed, with costs. Decree affirmed.